May it please the Court. Good morning. In his federal habeas petition, Mr. Scott alleged that his trial counsel had provided ineffective assistance of counsel in failing to challenge the voluntariness of his statements to the police and in failing to investigate and present mitigating evidence at sentencing. The district court concluded that these claims were procedurally barred because Mr. Scott had not raised them in a procedurally proper manner in the State court. The district court's ruling, which this Court reviews de novo, was erroneous for at least three reasons. First, the district court order excuse me, the State court order in this case did not explicitly invoke a State procedural bar to prevent Mr. Scott from amending his PCR petition. Second, there is no rule in Arizona that would prevent Mr. Scott from amending his PCR petition to attempt to add the claims that he attempted to add in 1996. And third ---- Even after the Court's rule on the petition? Yes, Your Honor. The rule is the only rule that would be remotely relevant would be Rule 32.6d, which simply provides that the Court can't allow a petition to be amended for a good cause. There is reason to believe in this case that the State court judge was confused about what the rule provided because the rule had, in fact, been amended four years previous to when Mr. Scott tried to amend his petition. And the rule used to say in 1992 and earlier that a petitioner could amend his petition prior to the entry of a dispositive order. Let me ask you something, picking up on Chief Judge Kuczynski's question. Do you see any difference between the required good cause for amendment pre-ruling and a good cause for amending the complaint after a decision has been reached? Is it similar to good cause, for instance, under Rule 8, Federal Rules of Procedure, good cause to amend a complaint, and good cause following entry of judgment under Rule 59 and Rule 60? Are there other elements to good cause with respect to the probability of a different result? Well, Your Honor, I do not see in this circumstance a difference with what the standard would be for showing good cause. But it's important to note that the State court judge in this case never suggested that Mr. Scott had failed to show good cause. His order expressly states that I just can't give you the relief that you seek, not that there had been any. There is a lot of sort of what could we call it, conclusory statement. He says, having included that it has no authority to grant any of the forms of relief requested. But he says that the – it would be inconsistent with the procedures. And I suppose our task is to say, is to ask the question, is there any permissible grounds for him having found that the underlying purpose of Rule 32 requires a denial of the motion to vacate? I would disagree, Judge Beyer. That is not this Court's position now. What this Court is charged with doing is making sure that the State court clearly and explicitly invoked a State procedural bar. This Court is not in a position to go back and say, well, had we been the State court judge, we may well have found no good cause. That is not what this Court's role is now. It was the State's obligation to – Your position is that the procedural bar is an affirmative defense. It is an affirmative defense. And in fact, Your Honor, I would point out that in their answer to Mr. Scott's Federal habeas petition, even the State could not identify a State procedural rule upon which the State court relied. They drop in a footnote saying, by the way, these claims are barred because the State court precluded Mr. Scott from amending his petition. But they don't identify a particular rule. And the fact of the matter is, is that there is no rule. In 1996, under Rule 32.6d, Mr. Scott could have amended his petition had he shown good cause. Judge Cole never made a finding on good cause because he didn't believe he could do it at that stage in the proceedings. In fact, he highlighted in his order that he could only do so before. Now, that was based on case law that had interpreted a prior version of Rule 32.6d. Now, Judge Bailiw, you also point out about the underlying purpose of Rule 32. Or of Rule 32. The only basis for setting aside a rule in Rule 32, the only trial court basis for setting aside a ruling is under 32.9 with the motion for rehearing. And that wasn't done. So I can understand why Judge Cole said that the procedures were not followed under Rule 32. My question, your position, if I understand it correctly, is that it's not up to this Court to find if there is a possible basis under Rule 32 for Judge Cole to be right, but it's the prosecution's burden for under affirmative defense to establish a clear procedural basis which is consistently followed. Yes, Your Honor. Take your point. And also, I would disagree with one point, Your Honor. It's my understanding, and I can check the record, but when Mr. Scott's second post-conviction counsel was appointed, she filed a motion to reconsider the judge's ruling. And the judge granted time in which for her to file it. Well, the judge granted her 30 days in which to take whatever action she thought was appropriate. And then she filed that, and he denied it based on the fact that he had no authority. Do you argue that the granting of the time in which to file an amended petition is implicitly a ruling that an amended petition may be filed? Well, the judge did not grant her time to file the amended petition. He said to file he granted her 30 days to take whatever action she thought appropriate. Now, even if, as I said, there is no rule that would have precluded the judge from doing what Mr. Scott was requesting that he do, so that should end this Court's to the claims that Mr. Scott raised with regard to it. And if there's no procedural bar, what remedy do you seek? Our remedy would be to have the case remanded to the district court for us to be permitted to brief on the merits, those claims that were properly raised in State court and raised in the Federal habeas petition. That would be our remedy on that claim. And the district court would determine whether as a matter of Arizona law there had been a procedural default? No, Your Honor. I think we would already have determined that. That would be this Court's decision to make. And the district court would simply take a look at your three claims of ineffective assistance of counsel and determine whether those claims pass muster under 2254d. Well, in that situation, there would be no requirement that we satisfy 2254d, because the State court never ruled on the merits of our claim. So the district court could review those claims de novo. I would also point out we did identify three claims in our brief. There is an additional claim. When Mr. Scott alleged in the post-conviction petition that was filed in this case that his counsel had been ineffective with regard to the presentation of evidence regarding the victim's father's request for leniency, that claim was phrased in the language of ineffective assistance of trial and appellate counsel, and that was how it was phrased in the district court pleading as well. It was simply overlooked, I believe, by the district court that that aspect of the claim had been properly exhausted. So in essence, there would be a fourth issue. But based on our review of the attempted amended petition in the State court and the petition that was filed by First Habeas Counsel, those would be the only claims that would be properly exhausted and could be reviewed on the merits by the district court. Well, let's get to the question of whether the State court did have authority. Essentially, the State court viewed itself as having no authority. It was invoking what it thought was a State rule that this kind of claim was bought at that point. Yes, Your Honor. I mean, on the same page. And you say the trial court was just, the State trial court was confused about that, but that's a matter to take up with the State courts. I mean, we can't say the State courts are wrong on a matter of State law. And if you thought that the trial judge was wrong about its interpretation of the State rule, why wasn't that something that had to be corrected at all by the Arizona Supreme Court? The Arizona Supreme Court, Your Honor, issued only a one-word denial in this case. So we had to be able to correct it. It means it just essentially affirmed. Essentially, it did not correct what you view as an error of State law. Aren't we sort of stuck with that now?  There is no interpretation involved with regard to what Rule 32.6d says. And it's clear that there was a change in the law. So the next step would be, even if you felt that you were confined by that, there is no consistent application of that rule, because in Arizona, in fact, the legislature via the Arizona Supreme Court changed the rule in 1992. So there's not never been a consistent rule with regard to the issue here of amending after. They have such a rule. Do you agree that they did have such a rule? Certainly, Your Honor. And then in your view, Arizona has changed the rule. But another way of viewing it is to say Arizona legislature did something which the State courts interpreted as being a continuation of the old rule. We may look at it and say, boy, that's really wrong. We certainly had regarded the question, would interpret it a different way. But the Arizona State courts, which are the ultimate authority as to what Arizona law means, says this rule, which was in existence and that the legislature made some amendments to it, because two of those amendments is being, having not changed the basic rule. Aren't we all stuck with that? I can think of two. Can't we just say, well, you know, if you then go back and look at the rule going back, pre-amendment, it's one continuous rule which the State courts have simply brought forward, despite what you argue is the legislative amendment. Well, I think I can think of three reasons why that would not be the case. One good one has always been. The one, my first one probably won't be considered good by the Court, but I think that the ---- It's always best to start with your weak assumptions. The ---- Build-up. Statutory. Principles of statutory interpretation dictate that when a rule or a statute is expressly changed and something is removed, there was a purpose behind that. And the only language that was removed ---- These are good arguments directed to the State courts, but we do not interpret State law. And that's why that's ---- And, you know, if I had a nickel for every time I saw a court interpret statutory language in which I thought was crazy, I'd have a lot of nickels. And that's why this ---- and that ---- but this Court does interpret procedural bar under Federal habeas corpus procedures. Lead with your trump. Okay. All right. There was no explicit order in this case. It's that clear. There was no explicit order. And even if there were an explicit order, Arizona has not ---- I'm sorry. What was the word that said, gee, I don't have authority? Well, and he also said, besides it's not consistent with the general policy underlying Rule 32, which was also in consideration of the comment to Rule 32.6d that said, no, you must review every claim raised, and they use the words, lurking behind those claims. You must do a complete review. So the judge was just wrong. But more ---- even if the Court felt confined by that, and I suggest that the record is pretty clear, the record is also clear that even if that were a ---- an acceptable State rule, it is not regularly invoked, especially in capital cases in Arizona. And we provided the Court with two examples in which the ---- in capital cases, the State court had allowed amendments to occur after entry of the final judgment. And, in fact, more than just a simple amendment, those cases sent back for an entirely new postconviction. You're talking about Rodriguez and Stokes. Stokes and Koehler, Your Honor. And so those are those two cases. Once we prevent ---- present this Court with that evidence ---- Those are postamendments? Yes, Your Honor. They are. They are postamendment. Once we present the Court with that evidence, the burden is back on the State to show, under Federal law, that it is a firmly established and consistently applied rule. So even if this Court were to find that the rule existed, it is not firmly established and, therefore, cannot act as a procedural bar in this case. Now, we've raised another issue in this case, which may obviously seem very far-reaching. And we have asserted that Mr. Scott had a general right to the effective assistance of counsel in his postconviction proceeding for alleging claims of ineffective assistance of counsel at trial and direct appeal. That would require reading Bonin very narrowly. I disagree, Your Honor. And this is why. Aside from the factual distinction in Bonin, if you look at the decision in Bonin, that case refers solely to a Sixth Amendment right to counsel in postconviction proceedings. In fact, Judge Wallace's opinion mentions the Sixth Amendment five times in his paragraph where he says there is no right. We are not alleging that there is a Sixth Amendment right to counsel in postconviction proceedings. We are alleging that there is a due process right, and that is a right that has been recognized by the United States Supreme Court for at least 20 years since Evitz v. Lucie, because in Arizona, a postconviction proceeding is the first appeal as of right on issues of ineffective assistance of counsel at trial and sentencing. It is not a new, crazy request. The United States Supreme Court has recognized this right for years. We are not precluded by Teague in this habeas case from alleging it because we are not asking this Court to recognize a new rule of constitutional procedure. We are simply asking this Court to recognize that in Arizona, postconviction proceedings are the first right of appeal on issues of constitutional effectiveness of counsel. That's not an unusual Arizona rule. We have something similar in federal court, but maybe our rule is a little less categorical. I don't quite know how categorical the Arizona rule is. What we say usually is if you've got a ineffective assistance of counsel claim, we normally don't consider it on direct appeal. And that's because it's usually pretty difficult to tell whether the lawyer might have had some strategic reason for doing what he did. I mean, something may look really odd on the trial transcript, but maybe the lawyer was trying to prevent something worse happening that he knows about but he didn't want to open the door to. But we do on occasion deny these claims. We look at it and we say it's obvious. We don't need an explanation. It's pretty clear what the lawyer was doing here. And we so ours is not a categorical rule. Is Arizona rule categorical? No, Your Honor. Arizona's rule is the same. The Arizona Supreme Court will review, traditionally they have said, that they will review a claim of ineffective assistance of counsel on direct appeal only if the claim is warrantless, so that they can simply dispose of it. But the Arizona Supreme Court in State v. Sprites, I believe in 2000, made it clear that post-conviction proceedings are where ineffective assistance of claims, ineffective assistance of counsel claims are to be brought. So that is the rule in Arizona. And it really follows the rule. So what does that do to your argument? I mean, your claim, as I had read, your argument was that you can't raise these issues on direct appeal, and so your first appeal as of right is the collateral proceedings, and therefore, the collateral proceedings, what is it, it's called habeas in the law? It's called post-conviction, post-conviction proceedings. The post-conviction is really your first appeal as of right. And it is your first meaningful appeal as of right, because the only way that the Arizona Supreme Court will address the claim is if it's meritless. And so the only chance that you have to meaningfully assert your right to Sixth Amendment counsel is in State post-conviction proceedings. And it's the – and there is no – that is where the record is developed. It's your first opportunity to have the issue meaningfully briefed and meaningfully presented. And that is why we say there is the right. Now, the – I think – I think at the very least, what you can claim is that's an issue that's open. At the very least, although I would suggest that under Evitz v. Lucie, it's been decided and – and it is something that this Court should recognize. And we also – I mean, you have to read Bonin as saying federal habeas. No. I – and that's what we argued in our brief. And that was – I agree. That was our original position. But the more I read Bonin – and I recognize, Your Honor, that you were on that panel, so you know more about the case than I. It was so long ago that you probably – didn't I write separately in Bonin, too? Well, a different issue. But that was at Walsh's opinion. And I must tell you, I don't remember my opinions from that long ago. Well, I will tell you – Except as I read them. So you probably know as much about this case as I do. I was reading it last night, so I probably do have a better recollection. And my – Well, then – The recollection is – Well, then, we'll find out with it. That is a Sixth Amendment. The issue raised in that case was a Sixth Amendment right to counsel, which is why Judge Wallace was concerned about the continuum of cases where you would never have an end to ineffective assistance of counsel claims. It would follow on and on, ad infinitum. There's a difference, though. Due process is based on – and that's what we're arguing, due process. That's based on fundamental fairness. And so our argument is it is fundamentally unfair to make Mr. Scott go into State post-conviction, especially with the lawyer he had in this case, his only opportunity to allege post-conviction of counsel – excuse me, only opportunity to allege ineffective assistance of counsel in a meaningful way. Kennedy, do we have to ignore some portion of the record in order to focus squarely on the argument you make? This record shows that there was a point at which Mr. Scott fired his lawyer and said he was representing himself. If we factor that into the equation, how do we get to the point you want to – you are making? Well, I think that takes us – if you factor that into the equation, that takes us down an equally, I think, valuable road to Mr. Scott, which is that after he sent that letter, and there were a series, I believe, of five – Well, he sent more than one. He sent five, Your Honor. The opposite, yes. Yes. That Mr. Bassett was no longer acting as Mr. Scott's counsel, and the State had an – excuse me, the State court had an obligation to respond to Mr. Scott's concerns. This went on for almost a year, and nothing was done. So there really – They didn't respond, so they acted as if he continued to represent him. But your point is he didn't have competent counsel, and the record shows that he didn't want competent counsel. He wanted to represent himself. I disagree with that interpretation of the record. What he said was – in fact, he finally wrote a letter saying, I would rather die than have this man represent me. So he wasn't eager to represent himself on post-conviction. He had a counsel who would not – What he said was, don't you – I don't want to be forced to keep this attorney. Isn't that what he said? I'd rather be dead than have to do that. Essentially, yes. After his fifth time. I mean, he also had written letters saying, I have, in capital letters, fired him. Yes. And so that was an ongoing, for almost a year, colloquy between our client and –  No, that's fine. All I'm suggesting is we can't ignore the record as we review your argument that he had ineffective counsel, and the record shows that he didn't want any counsel at all. He wanted to represent himself. Well, he wanted counsel initially, and he – and he wanted counsel. He also made it clear at the hearing later when Rachel Yosha offered to be his counsel that he wanted her as counsel. He wanted effective counsel. And another point on that, Your Honor, would be that the ineffectiveness that we are most concerned about occurred before Mr. Scott wrote his first letter. That was when Mr. Bassett filed a one-claim, three-page post-conviction proceeding – post-conviction petition. So the ineffectiveness had already occurred by that point, would be our argument. I would also briefly – You were going to tell me how to read Judge Wallace's opinion, Barnum. Oh, yes, Your Honor. The – Judge Wallace's opinion in Barnum makes it clear that all the court was addressing there was the Sixth Amendment right, not the Fourteenth Amendment due process right that we allege here. So you don't have to read Barnum at all, essentially, to rule in the way that we're asking you to do. Barnum – Well, it's – it's a little confusing. Isn't the Sixth Amendment applied to the States through the Fourteenth? Yes. Yes. So this is sort of a different part of the Fourteenth? Isn't this all due process? But – but this is – this is the fundamental fairness aspect of due process. When – when the United States Supreme Court recognized the right to the – I suppose – as opposed to the competent counsel aspect of the due process? As opposed to the – the incorporation aspect of the Fourteenth Amendment. How can they be different if – if – if your claim is I had a bad lawyer and, therefore, was – the proceeding wasn't fundamentally fair, how can you test it by different benchmarks than the Sixth Amendment standard as to what is competent counsel? Because the Sixth Amendment only provides me with the right to competent counsel at trial, and any other right I have to competent counsel after that point is simply a question of fundamental fairness under the United States Supreme Court's analysis. And so I am – Mr. Scott is not alleging that Mr. Bassett's performance violated his Sixth Amendment right. He's saying it's fundamentally unfair under due process to force me to have this amount as my counsel. So that is – that is the – that is the distinction here between Bonin and other – the other cases. And with the Court's permission, I would like to reserve the remainder of my time for rebuttal. Thank you. I will hear from the State. May it please the Court, my name is Kent Catani. I'm an Assistant Attorney General for the State of Arizona, representing respondents in this matter. I'd like to first address the issue relating to Rule 32.6. That is, in fact, a procedural rule, and it is a matter of State law. The State court clearly invoked a procedural rule. There's nothing about the ruling that the State court entered that suggests that it considered in any way the merits of the claim. It's a procedural ruling. It's – you cannot amend your petition. And this is really no different than – than a ruling – there is an exception to this rule for good cause. The – that doesn't mean that it doesn't – it's not a procedural bar if they find that the exception does not apply in this case. It would be like arguing in a Rule 32 petition that you have newly discovered evidence. And I'm talking now – I'm suggesting a successive Rule 32 petition where a petitioner comes in and says, I have newly discovered evidence, so I have an exception to the rule of preclusion. And the court looks at it and says, that's not newly discovered evidence, therefore, your claim is precluded. Rule 32.6 is like that. There's a – there's an exception for good cause, but if you don't meet good cause, then it's simply a rule of preclusion. Kennedy, did Judge Cole consider good cause? He's – as I read his ruling, it says, I have no authority to grant any of the forms of relief requested. It's not – you're right, Judge Cole does not specifically address good cause. But the same claim was raised to the Arizona Supreme Court, and the same argument was made. The Arizona Supreme Court summarily rejected the claim. So to the extent there is an availability of amending a petition after entry, after the petition has been dismissed, the Arizona Supreme Court's ruling is essentially you haven't satisfied the exception here. And I'd like to take a step back. Why is that? I mean, the court, the – the Superior Court, is that the name of the court? Yes. The Superior Court says, I don't have authority. I can't do it. I've looked at the rule, and the rule says I can't do it. And the State Supreme Court denies with a postcard denial, right? Yes. Why is that simply the most plausible way of reading it is that they have confirmed what the judge – or affirmed what the judge held, which is that he has no authority. You know, it's much harder to say they must have found absence of good cause. Well, he can – Was good cause even argued in the papers before the Arizona Supreme Court? Yes. The petition for review did argue good cause. And I would like to take a step back. The suggestion has been made that this amendment to Rule 32.6 made it easier to file an amendment. The previous version of Rule 32.6, the 1992 version, allowed the court – subsection C of 32.6, dealing with summary disposition, allowed the court to look at the petition, decide if there were any colorable claims, and summarily dismiss the petition or grant leave to file an amended petition. The rule was amended, and it's – under the new version, it's clear that that's not the – that's not the procedure. It's – the court now looks at it and says, are there claims that are precluded that we can identify up front? If so, we're going to summarily dismiss them. If not, we're going to go to a hearing. If there are no colorable claims, we dismiss the petition. There's now no longer a provision or you can grant an order to amend the petition. The – this was enacted after – after some victims' rights legislation. Subsection A and subsection B restricted the prosecutor's and the defense attorney's ability to – to obtain extensions of time. It said – it says now you can only get an extension of time for extraordinary – in extraordinary circumstances. I think when you read Rule 32.6 in its entirety, the new version, it's clear that this was an attempt to speed up the process, to reduce delay in the Rule 32 process. And it would be illogical to conclude that speeding up the process would be accomplished by now granting more readily a petition to amend after the – after the petition has been denied. So I disagree with the characterization that this change in the language somehow helps the defendant. I think – I think it does the exact opposite. And again, this is an argument that was – What about the – the argument that this is not consistently applied and that counsel cited those two cases saying the rule is not consistently applied? This is an argument that has been raised for the first time in this Court. This was never raised in – in the district court and it was certainly never presented to – to the state courts. And the – the Stokely decision came out three days after the petition for review was denied in this case. You may want to answer the judge's question because the fact that it's never been raised doesn't mean that we're not going to consider it. I – I understand. But I'm suggesting – and the case that they cited, the Powell case, is one in which the – the issue was at least raised in the district court in the – I believe in seeking a motion for certificate of appealability. This – this issue was never raised in – in the state court. And I'm sorry, I may have derailed in terms of the question you were asking, Judge Kaczynski. Well, the question was it has to be consistently applied. I don't know how this could be raised in the state court at all because it's not a state issue. The requirement of consistent application is a federal requirement. We – we respect procedural bars if they are consistently applied by the state courts. So this is not something that could have been raised in the state court. It wouldn't have had any meaning in state court. It can only be raised in federal court. And they say, look, look at the Arizona courts. After amendment of the rule, they do make exceptions. So it's not consistently applied. So even if you have a theoretical bar, it's not a bar that – that applies in federal habeas because it's not been consistently applied. And he gives examples of a couple of cases where it wasn't applied. Well, I think this – How do you deal with those? I think this is something that you could raise in state court. If there are new decisions that come out, you could certainly go in and – and say there's been a change in the law and – and argue to the state – It's not a state issue. The – the question – the question of whether we respect the state bar because of lack of – of whether we respect or don't respect the bar because it has been consistently applied or not consistently applied in the state courts is purely a federal issue. This is our decision to look at the – at the – how the state courts apply the bar. So this is not something you could have raised in state court. But why don't you go ahead and answer my question? How do you deal with their – their citation of these cases where the state courts seem not to have consistently applied it? Well, first, I – I think it's improper to raise them for the first time in this court. They – they should have been raised to the extent the argument was going to be made. No. You keep not answering the question. Now, the next thing I want to hear from you is an answer to my question. If you don't want to answer, then you can go on to something else, and I'll just simply say there was no answer from the state. But you're – you're – Just – just answer the question. Don't tell me why it's not presented or why it's irrelevant or should have been raised or waived. Just answer the question. Well, I'm – I may be misunderstanding, but what I – what I'm trying to suggest – I think you're the only one in this courtroom who is misunderstanding. What I would suggest is that this is a different type of rule. Rule 32.6 says that there's an exception for good cause. So the fact that a court may reach a different conclusion in a different case can simply mean that the court found good cause in that case, and it doesn't mean that there's good cause in this case. Is that what happened in those two cases? In – in Stokely and Kerr, it's not clear what happened because they're unpublished decisions. It's very difficult to know exactly what the underlying principles were. What – what does appear to have happened is that they did permit an amendment after – after the petition had been denied, and it suggests then that if – if they're interpreting the rule to – Well, if I – if I understand correctly how this works is you raise the bar and say there is a state procedural bar. They come back, and so the – the tennis ball is now on the other side of the net, and they bat it back to you by saying, but it doesn't apply because it's not consistently applied by the state courts, and consistent application is one of the requirements in federal court for – for – for us to give – to respect the state bar, to apply it to bar federal behavior proceedings. So there goes the ball across the net to you, and you want to say, well, there is consistent application after all, if I understand correctly, because there is an explanation for those two orders that is not – does not show inconsistent application. There is some other way of explaining why those orders are in fact consistent with the rule. And this is where you are, but you don't come up with it very good. You say, well, we don't know. The orders are unpublished. You don't look at the – you don't point to the – to the – to the briefing of the cases. You don't – I mean, uncertainty hurts you because the ball is now on your side of the court, and you have to bat it back to them by showing, in fact, these two exceptions are not exceptions at all. And uncertainty on your side of the net is sort of, you know, the ball drops to the ground, and you lose the point, just as I see it. Not all these cases are unpublished. Are you familiar with the case of Rodriguez v. State of Arizona? I don't recall specifically the whole name. Well, let me help you out. Cited as 183 Arizona 331, 903 Pacific 2nd, 639. In that case, their petition was not filed by counsel at all. And the pro se petitioner asked for leave to file a late petition, amend the petition. The district court, the superior court, denied that, said no. But nonetheless, the court of appeal held that there was good cause for allowing the post-decision petition to be filed. That's published case 1995. Good cause exists to allow a petitioner to have a 30-day extension to file pro se post-conviction relief petition. And what I'm suggesting is that good cause is a case-by-case analysis. Well, yeah, but if there is good cause, you can file a post-decision amended petition. And here's the good judge, Cole, saying, I have no authority to grant any of the forms of relief requested. He mentions good cause in the pre-decision period of time. He says, there's little doubt that the court is authorized upon a show of good cause to amend a petition for post-conviction relief before a dispositive order issues. And then that terrible word we see all the time. However, defendant seeks an order vacating this court's order dismissing this petition for post-conviction relief. He's drawing a distinction between a pre-decision request to amend and a post-decision request to amend. As I asked Mr. Burke, there might very well be different kinds of good cause for one or the other. There's a different good cause under Rule 8 than there is under Rule 59. You can argue that. But don't tell me that the Arizona Courts of Appeal haven't allowed a post-decision amendment or new petition on a finding of good cause. Well, I believe that case is different with no petition having been filed. There's no ruling on a petition. No, but there was a ruling. The district court said, I deny the petition, although it's not even filed. That's part of the ruling. Right. So and then there's the other two cases, the Stokely case and the Kare case. Right. Where similar cases, the court of appeals said the district court, the superior court erred in not allowing an amendment after it's entered its order. Right. And that's the Arizona Supreme Court. And I think it's important to note that the Stokely decision came out three days after the petition for review was denied in this case. And I think that suggests that the Arizona Supreme Court made a finding that there's good cause in the Stokely case, but declined to find good cause in this case. It was argued to the Arizona Supreme Court. And they rejected that argument with a summary dismissal. And in Kare, the Supreme Court allowed a filing of a petition, a late filing, upon assuring good cause, even though it had been denied. That's right. But there's a finding of good cause. And I think that's the key. But the good judge, Judge Cole, said, I can't consider good cause here because this decision has already been reached. That's the way I read his ruling. Do you read it differently? Well, I do read it that way, although he also says in the entire framework of Rule 32 that to me suggests that he's looking at what you're really trying to do is file a successive petition. And that's barred under Rule 32.2a.3. It's interesting what you have to argue. I mean, I think the only thing that's left open to you is that by the postcard denial in the Arizona Supreme Court, they must have found an absence of good cause. That what they were doing is, even though the trial judge himself thought he had no authority, that they looked at it and said, we don't find it. Now, I don't know how things work in Arizona, but we normally wouldn't do that. If there is something like good cause to be found by the trial court, we wouldn't do the filing ourselves. We would remand it for the initial fact finder or decision maker or exerciser of discretion, which would be the trial judge, to make that decision. We wouldn't be in a position to make that kind of decision ourselves. Does the Arizona Supreme Court often make these kinds of determinations itself rather than remand them to the trial judge? I can't point to a specific case on that, but the good cause asserts It's counterintuitive. It's the kind of thing that the trial judge would do, vested with all of the not only the fact-finding ability, but also the authority to exercise discretion that trial judges have and appellate judges supposedly don't have. I would agree, except that here the assertion of cause is ineffective assistance of post-conviction counsel. And the Arizona Supreme Court has said that that's not a viable claim. And Arizona law is consistent with case law from the United States Supreme Court on that point. So the Arizona Supreme Court is certainly in a You don't mean to say that if the trial judge had said, you know, I've looked at this record. I find good cause because he had a terrible lawyer and, you know, my eyes have been opened to, by new counsel, to the terrible job that the first lawyer, the first post-conviction lawyer did. That the Arizona Supreme Court would reverse that. It would say, no, sorry, a bad lawyer can't be a basis for good cause. You're not taking that position, are you? It's very possible the Arizona Supreme Court could take that position, depending on what the assertion is. If it's simply ineffective assistance, I guess it's hard to say without going through on a case-by-case basis and knowing what the assertion is. But they have said that in other cases. Because that's why we have the writ. So, and then we would review and we would say, no, you can't do it that way. But what I wish you'd do, and I know your time is running down, what do you see as the precise issue that's before us to be decided today? Well, the certified issue certainly is the claim that counsel should have presented testimony from the victim's, the murder victim's father. And that, I'm not sure if you have questions on that. I'm happy to address that. I think that's pretty clear that that claim is not viable. There is, under Booth and Payne, testimony from survivors as to the appropriate sentence is not a proper sentencing factor. The cases that are cited in the brief, there's a suggestion that the Arizona Supreme Court has allowed this type of evidence. There's a citation to the Williams case at 183 Arizona. And that misstates the holding of Williams. In Williams, the defendant attempted to put on evidence from one of the surviving victims that she did not want the death penalty because of the effect it would have on the defendant's family. The Court kept that out. I think your brief has covered the point you're making now. Do you think so? I do. And so I think the ---- Don't you want to consider the fact that the Court might see a broader question as we review a case where the penalty is death? And the broader issue may be, and I want you to tell me what you see it. Well, I see the broader issue as ---- You have to decide today. I see the broader issue as being, is this a question of State law? And if the Arizona Supreme Court, if the trial court and the Arizona Supreme Court reject a claim on the basis of a procedural rule, I don't think there's any question that neither the trial court nor the Arizona Supreme Court address the merits of these other claims. They denied it based on a State procedural rule. And so for me, I think the bigger issue is simply, is this a State law issue that can be revisited? And I think when you have ---- when it's a rule that provides an exception for good cause, I think it's very difficult to say that this rule is not regularly applied. That's where I was trying to go with this initially, suggesting that we have the same rule of preclusion as it relates to filing a successive petition based on newly discovered evidence. There's an exception. It's a procedural rule that keeps you from filing a successive petition. There's an exception if you establish that it's newly discovered evidence. If you do not meet that exception, then it's a procedural rule that precludes review in Federal court. And from my perspective, that's the same principle that should apply here with Rule 32.6. It's a procedural rule that should apply unless the exception is met. And the State court is the only real appropriate forum for addressing whether the exception ---- Kennedy, you must have noticed, though, both my colleagues have asked you specifically to tell us one of the requirements is that it must be consistently applied by the Arizona court. The suggestion is that it is not. And you haven't yet, at least to the opinion of a third of the panel, spoken directly to that point. Well, it's ---- and I apologize. I think it's difficult to establish that something is inconsistently applied when you can say that there's an exception to this. If you have enough and when you have two or possibly three, then you may have more than enough. But there's only one exception here, and that's upon a showing of good cause. No, no, no. Go ahead. Is it your point, Mr. Catani, that the trial court judge in Arizona, Judge Cole, ruled that there was no good cause for the filing of the proposed amendment? Well, that was ---- And that the Supreme Court of Arizona, by its postcard denial, accepted that as a legitimate ruling? It's my position that Judge Cole rejected Rule 32.6 as a basis for granting the relief sought. And there were follow-up motions filed. I realize Judge Cole's motion ---- Can I get an answer to the question I asked? Is it your position, is the State of Arizona saying that Judge Cole found there was no good cause in Ms. Yosha's petition to file an amended ---- amended petition? Yes or no? Can you say that? I would suggest that it's implicit in his ruling. He did not specifically say that. It's implicit in Judge Cole's ruling that there is no good cause for this petition. Yes. He states that ----  Well, he doesn't specifically go through and analyze it in that way. It has to be mighty implicit because he says, I don't have any authority. I mean, that's embedded, right? It must have been on the other side of the page or something. I don't think it's ---- I don't think he addressed it specifically in that way. I think it's the better the State law issue comes up in terms of what was argued to the Arizona Supreme Court. Why don't you just say no to Judge Baer's questioning? I should. I should say Judge Cole did not. What you're doing is drilling in forcefully just how bad your answer is. A simple no, you know, you can get past it and then deal with it. So your answer is what? The answer is no to that question. Okay. That's another tooth. Okay. So give them the ---- But then if he didn't find there was good cause and if Rule 32.6 says that any time after filing or after filing, an amendment can be ---- can be filed on the showing of good cause, and he didn't consider the issue of good cause, did he not abuse his discretion by failing to follow the rule? I think that would be an error of State law that would not be reviewed at this point. Okay. That's an answer. Maybe not a good answer, but it's an answer. And I think particularly when you put it in the context of what Judge Cole said, that this is not what's really what he's attempting to do is to file a successive petition. Essentially, when you look at Rule 32 in its entirety, what he's trying to do is inconsistent with that. And, again, I would go back to the change to Rule 32.6. I think it's clear that this was a restriction. The reality is that this man had a terrible lawyer trial, and his first post-conviction lawyer wasn't so hot either. So, you know, the first post-conviction lawyer, which is really the first chance he's had to raise the real problems or the serious, you know, what I think may well be serious problems with a trial lawyer's performance, he lets him down. He raises only, what, one issue and overlooks the rest. Well, I would certainly would not concede that there was ineffective assistance at trial or at the post-conviction stage. Nobody expects you to concede that there was, in fact, but there were certainly arguable points. The kind of thing that one would expect if a client's life is on the line, one would expect a competent lawyer to go through and raise some of these issues of performance at trial. And he admitted what he didn't do, what he didn't do. We've got the record, and that's what we decide on. And he said, I didn't do this, I didn't do that, I didn't do the other, didn't he? Well, it's the attorney did not raise several claims. That is accurate. But I think you can go through and look at the record and see that he had a reason. This isn't a case where the defendant was abandoned at trial or didn't have the assistance of expert mental health experts. If you read through the mental health expert reports from Dr. Tatro and Dr. Don, they They were asked to consider only competence to enter a guilty plea, wasn't it? No, they were not. I think that's a misstatement in the opening brief. If you look at their reports, they specifically also, they were asked to address competence at the time of trial, competence at the time of the crime. And the reports go through and say that there is no, there's no significant mental health defect. Both reports make that finding. So it was not just simply limited to competence to go to trial. So those issues were raised. There's a big difference between being competent or to stand trial or being insane and having that as a merits defense and having mental issues that go to mitigation. I mean, those are, there's lots of stuff that we've had in our cases where things are raised to mitigation. They don't provide a complete defense to the conviction, but they can provide, and our cases have made it pretty clear, they should be considered mitigation, especially when the penalty is there. I agree with that, but what I'm suggesting is these doctors were not limited in their review to simply assessing whether he was competent to stand trial. They were asked to look into his mental status at the time of the offense. And they went through a very detailed analysis of that. And when you couple that with Mr. Scott's repeated attempts to deny involvement in the crime, the conclusions from the mental health expert were not, were logical and I think suggested that it would not provide a lot of good information for the defendant to pursue in mitigation. Well, he did not deny being physically involved, having gone in the car with the child, with the victim and the accomplice. His claim is I was, I had no idea he was going to go kill him. And it seems there is certainly evidence in this record, and the evidence might have been developed, that this is somebody who's not real sharp to begin with and that he was buffaloed or fooled into or maneuvered into participating in what's clearly a horrible, heinous crime. But he clearly was not one of the leaders of the, he was not an initiator. And it strikes me that a good lawyer would have played on his lack of mental ability as a way to obtain mitigation of the sentencing. I think that was argued, this relatively limited involvement in the crime. In the first? With the first attorney. There was an attempt to keep some of the pre-sentence report out because there was harmful, there was damaging information in it. For example, during his interviews with the mental health experts, they asked him, why would you be blamed for this? And they said, well, they're suggesting that I had some sort of homosexual relationship or interest in Stiers, and that's not true. I'm not homosexual. And then the pre-sentence report contains evidence that he was arrested and convicted, a misdemeanor conviction, for indecent exposure based on sexual conduct with another man at an adult bookstore. And I think it was reasonable for the trial lawyer not to want to go down that road. And that's why I think he didn't. But that's never actually been considered, right? I mean, this is whether it was reasonable or was not reasonable. That's something that's never been considered by the State courts. It's never been considered by the Federal courts. That's true because those claims were never properly presented to the State court. I mean, we're certainly not in a position to say whether it was reasonable or not because that claim has never been developed. Right. I was just responding to your suggestion that it seems apparent from the record that there are areas to be developed. Yeah, but I was talking about a different lawyer. I was talking about the first post-conviction lawyer and what he might have raised in arguing about the competency of trial counsel. And the first post-conviction lawyer does not raise it. I'm just saying, just following up on my statement earlier, that it seems to me he had pretty bad lawyers at trial, or it looks like there may have been very bad lawyers at trial, and certainly the first post-conviction lawyer did not do as well a job as one would have hoped with the client's life on the line. And I would suggest that... It's hard to disagree with that, isn't it? Well, no. I can disagree with that, and it's based in, at least in part on, we don't make that analysis because there is no right to effective assistance without having, without raising that claim. It's difficult to know exactly what the attorney was thinking in terms of what should I raise, what should I not raise. And Congress has said we don't go down that road under 2254I. Ineffective assistance of post-conviction counsel can't be the basis for relief. I would think that the people of the State of Arizona would feel more comfortable before they execute this man to know that, in fact, he had all the arguments made on his behalf that to which he is constitutionally entitled. And I think that happened in this case. And it's important to take a step back as well and note the type of procedures that we have in place for the appointment of competent counsel at the trial stage that mental health experts are appointed. These arguments relating to his involvement were, in fact, advanced to the trial court. The jurors rejected them. The arguments relating to his confession, his recorded confession, the arguments were advanced to the jurors. He testified. The defendant himself testified. So the claims were addressed by the fact finders, by the jurors, and again by the sentencing judge. But the sentencing was done by the judge. It was not done by the jurors. Right. And a claim that he was feeble-minded or, you know, that perhaps not incompetent but he's the kind of guy that, given his history of head trauma and sort of his history with relationships with other people, that he's the kind of guy that was led down this path as a sort of more or less unwilling participant rather than a full accomplice. That argument was never made to the trial judge. Well, I think it was. If you read the special verdict, the special verdict is responding to the sentencing memorandum submitted by trial counsel. And the special verdict goes through all of the asserted avenues of mitigation. But the PSR wasn't read before the special verdict was prepared. The pre-sentence report. But this is a sentencing memorandum by defense counsel. But the pre-sentencing report is what had the recommendation of leniency by Mr. Milkey. It did, but the pre-sentence report also had recommendations against leniency. By the grandparents. By grandparents and by the pre-sentence report writer. And that goes to why we shouldn't consider – it would make our system arbitrary if we're going to base it on the individual opinion of a relative of the murder victim. The question, and we're not going to belabor it, but the question isn't. The question is whether that might have made a difference, and whether it's probable, not very likely, or more likely than not. And we don't know the answer to that question since it was never presented, do we? Well, I think we do know the answer to the question in terms of whether the evidence suggests that Mr. Milkey, the murdered boy's father, wanted leniency. We do know the answer to that question. That was raised and addressed by the – it was raised in the PCR. The very same judge who sentenced – No, no, no. We know he said it. We also know – well, we don't know, but I suspect he didn't know that he was going to be one of the victims if he hadn't gone out of town. They were going to kill him and the son. Isn't that what the record shows? There is some testimony to that effect. But the question in terms of do we know what the trial court would have done if he had known that Milkey was – that Mr. Milkey was recommending leniency? I think we do know the answer to that question. The Judge Cole answered it in the post-conviction. He had read the PSR.  And this is after it's raised in the post-conviction petition, and he says that would not have taken my mind. I think. Thank you. I can't tell what the – it seems to be going up. The red light says your four minutes have passed. Oh, okay. I'm sorry. That's the – almost five. Thank you, Your Honor. You know why you didn't become a mathematician, right? Yeah. We'll hear from – you have about five minutes left for rebuttal. Thank you, Your Honor. I hope I won't take those five minutes. Very briefly, just to correct one point that Mr. Katani mentioned, and just so that there's no confusion, he referred to the certified claim. But pursuant to this Court's subsequent order, all three claims that we discussed are certified for this Court to review. It is extremely frustrating to sit there and listen to the State argue why Mr. Scott's trial counsel was effective when we have never been allowed to present the evidence as to why he was not effective. And to hear the State say, oh, these experts, they reviewed it in the Rule 11 competency, that's enough, when we've never been able to show to you why he was so grossly ineffective, because he knew our client had brain atrophy, because our client told him, and there was evidence easily found that would have demonstrated that. The issue has never been resolved by the Court. And the reason it wasn't resolved by the Court was because there was a finding of procedural bar. And what Mr. Katani is arguing is that this Court should simply guess as to what the State court was believing or suggesting with regard to what happened in this case. And that is not what the preclusion rules require. The preclusion rules require explicit invocation, and we don't have it here. And so these claims should not be procedurally barred. Also, I ---- The bottom line, what should the Court, this Court, do in your view? This Court, in the very least, should remand to the district court for a here ---- for further development of the issue of ineffective assistance of counsel at trial. And ---- Well, you say the least. That's really also the most. No, Your Honor. I disagree. I believe that this Court, under the 14th Amendment, could reverse and send it back to the State court for a meaningful review in State court of the claims of ineffective assistance, because my client was denied his first appeal as of right in any meaningful sense. So that would be the most ---- I have never heard of doing that. I mean, how could we possibly do that? I mean, it's one thing to say, and, you know, I don't know if we'll give it to you, but it's one thing to say we could ---- I mean, this is a very good question, Judge Ferris asked, because I thought I knew about the scope of what you were asking, and I guess I'm now confused. I thought, look, maybe if you are successful and say, well, okay, you raised issues that need factual development, and if the factual development should break your way, then there would be a basis for granting habeas. I mean, habeas is a, you know, highly intrusive, and it's a great interference with the processes of the State courts, and I thought we have to have evidence that, in fact, they badly messed up. How could we possibly grant habeas and force them to go through a proceeding without this kind of evidence that you are alluding to? Because the evidence that I'm ---- to distinguish between the evidence that refers to trial counsel, I agree with you entirely, Your Honor. But with the evidence, I think the record is plain that post-conviction counsel was ineffective. And if this Court were to recognize Mr. Scott's right to the effect of assistance of post-conviction counsel ---- Sotomayor, let's give you that. But so what? We are not granting a writ to undo post-conviction proceedings. The whole game here is, is his incarceration unlawful? Right. So the only thing we can't really ---- I mean, we couldn't, for example, issue a writ and say, Arizona Supreme Court, we don't like your postcard denials. We want you to write an opinion explaining why you did what you did. I mean, we don't have the power to do that. We can say the State's incarceration of the Petitioner is unlawful, and therefore we order him released or retired or released or re-sentenced. We can do that. Do we really have authority to say you have to reopen post-trial proceedings? I mean, let's say ---- I mean, that doesn't go to his incarceration. It's a procedural step along the way. It is a procedural step. But if this Court were to find, for example, in a high ---- Let's say we were convinced that they were really wrong, that the post-trial proceedings were really wrong. We still couldn't say, I mean, wrong in the sense that they should have developed the record further. We still couldn't say that trial counsel was constitutionally ineffective or that he was denied due process of trial. All we could say is that the State proceedings to examine that process were bad, right? And we can't grant a writ ordering him released or re-sentenced or retried based on a defect in the post-trial proceedings. I mean, think carefully about what you're asking for. Well, we will accept, certainly, then a remand to the district court for further proceedings on the merits of our ineffective assistance of trial counsel claims. That would be what we would recommend, at the very least. I understand your Honor's concern, although if this Court, for example, were to find that a direct appeal counsel was ineffective on the record, the issue would be then to ---- the Court's remedy would be to issue the writ, order the district court to issue the writ, unless further proceedings were taken in State court to remedy. We suggest there's no difference when ---- I'm sorry. You have a case supporting that? Evitz v. Lucie, Your Honor, 1985, United States Supreme Court. That would be the case that, I mean, we recognize that we're asking a great deal of this Court, but we believe ---- Even ---- let's say you have an effective appellate counsel, but then you look at the most effective appellate counsel, they couldn't have won this. I mean, sure, this guy was terrible, and he raised terrible arguments, but this was an unwinnable case on appeal, so even the best lawyer couldn't have done it. How could you undo the ---- don't you have to find prejudice from it? I mean, I don't know. Yes. You do have to find prejudice. And by analogy to the post-trial proceedings, post-commission proceedings here, let's say the guy, the first guy, is terrible, but when all of a sudden none were looking, they say, well, even a good lawyer, having put in everything they could have put in, the result would have been the same. It would have taken longer, but it would have been the same. I would suggest that this is in this case, Your Honor, because ---- But we can't tell whether it's this case without having developed the facts for them in district court. I can see that, Your Honor. Yes. Yes. I mean, it's a very narrow point, but I don't think that there's anything more you can ask for than the least you can ask for, which is that we remand for an evidentiary hearing. I can't ---- it just doesn't fit in my head as to how we could possibly undo the State processes without the kind of evidentiary ---- Are you demanding an evidentiary hearing or just for further proceedings? Because the district court might find that based on an amended petition, the claims simply don't arrive at the level of 2254d, right? Well, a couple of answers there. The court, the district court, would not be bound by 2254d because there was never a finding on the merits in State court. Under 2241. Okay. And then the other issue would be I would ---- I think the procedure would be we would brief on the merits, the IAC claims that were raised in the habeas petition, and then request an evidentiary hearing on that, on those claims, and it would be up to the district court under 2254e if we were to receive an evidentiary hearing. Okay. Thank you. Thank you. We want to thank counsel on both sides for what I think were exceptionally good arguments. It's a difficult case and will very much help when counsel is knowledgeable and competent. Thank you very much. The case is moved and adjourned.
judges: Kozinski, Farris, Bea